## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of GLF CONSTRUCTION CORPORATION, a Florida profit corporation, | CIVIL ACTION NO: |
| Plaintiff, | DISTRICT JUDGE: |
| v. | MAGISTRATE: |
| FEDCON JOINT VENTURE, a Florida joint venture, DAVID BOLAND, INC. a Florida profit corporation, JT CONSTRUCTION ENTERPRISE CORPORATION, a Florida profit corporation, and WESTERN SURETY COMPANY, | |
| Defendants. | |

## COMPLAINT

Use Plaintiff, GLF CONSTRUCTION CORPORATION ("GLF CONSTRUCTION"), by and through its undersigned counsel, sues Defendants, FEDCON JOINT VENTURE ("FEDCON"), DAVID BOLAND, INC. ("DAVID BOLAND"), JT CONSTRUCTION ENTERPRISE CORPORATION, ("JT CONSTRUCTION"), and WESTERN SURETY COMPANY ("SURETY"), and alleges that it is entitled to relief based on the following facts:

## THE PARTIES

1.      GLF CONSTRUCTION is a corporation organized and existing under the laws of the State of Florida, and at all times material hereto was registered to do business in the state of Louisiana and was engaged in the business of providing heavy civil contracting services.

2.      FEDCON is a Florida based joint venture comprised of DAVID BOLAND and JT CONSTRUCTION, with its principal office and place of business located in Titusville, Florida,

and at all times material hereto FEDCON was registered to do business in the state of Louisiana and engaged in the business of providing general contracting services in the State of Louisiana. FEDCON's principal business establishment in the State of Louisiana is located in Baton Rouge.

3.     DAVID BOLAND is a corporation organized and existing under the laws of the State of Florida, with its principal office and place of business located in Titusville, Florida, and, at all times material hereto was registered to engage in the practice of providing general contracting services in the State of Louisiana as a joint venturer of FEDCON.

4.     JT CONSTRUCTION is a corporation organized and existing under the laws of the State of Florida, with its principal office and place of business located in Orange City, Florida, and at all times material hereto was registered to engage in the practice of providing general contracting services in the State of Louisiana as a joint venturer of FEDCON.

5.     WESTERN SURETY is a corporation organized and existing under the laws of the State of South Dakota, with its principal office and place of business located in Sioux Falls, South Dakota, and at all times material hereto, WESTERN SURETY was duly authorized to engage in the business of executing surety bonds in the state of Louisiana.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over GLF CONSTRUCTION's Miller Act claim pursuant to 40 U.S.C. §3133(b)(3), and supplemental jurisdiction over all other claims in this action, which arise out of the same transaction or occurrence pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in the Eastern District of Louisiana because the principal contract described below in Paragraph 9 between FEDCON and the United States of America, acting by and through the United States Army Corps of Engineers ("USACE"), was to be performed and

2

executed in the Eastern District of Louisiana.  Additionally, the Labor and Material Payment Bond issued pursuant to the Miller Act by FEDCON and SURETY and furnished to USACE was for the project located in the Eastern District of Louisiana.

8.      All conditions precedent to bringing this lawsuit have occurred, have been performed, or have otherwise been waived.

**GENERAL ALLEGATIONS**

9.      On or about October 18, 2013, FEDCON was awarded a contract ("the Prime Contract") with the United States of America, acting by and through USACE ("Owner"), New Orleans District, to perform all work on a project known as Resilient Features, WBV, HSDRRS, Mississippi River Levee, Oak Point to Augusta, WBV-MRL 2.2, Plaquemines Parish, Louisiana ("the Project"). The Prime Contract, designated as USCAE Prime Contract Number W912P8-14-C-0002, calls for FEDCON to repair and raise substandard levees along a section of the Mississippi River between the cities of Oak Point and Augusta.

10.      On or about October 21, 2013, pursuant to the terms of the Prime Contract and in accordance with the Miller Act, 40 U.S.C. § 3131, FEDCON, as principal, and SURETY, as surety, executed and delivered to the Owner a payment bond ("Miller Act Bond") for the Project by which FEDCON and SURETY bound themselves, jointly and severally, in the sum of $48,372,000.00 for the protection of all persons supplying labor and material in carrying out the work provided for in the Prime Contract.  A copy of the Miller Act Bond is attached hereto as Exhibit 1.

11.      On or about January 22, 2014, GLF CONSTRUCTION entered into a Subcontract ("the Subcontract") with FEDCON whereby GLF CONSTRUCTION was to furnish labor,

materials, and services on the Project and complete a portion of FEDCON's scope of work pursuant to the Prime Contract, at the agreed price of $10,517,859.50.  A copy of the Subcontract is attached hereto as Exhibit 2.

12.     The Subcontract, in Article 1. A., entitled "CONTRACT DOCUMENTS", provides in part that the Subcontract includes, "the Prime Contract between the Owner and the Contractor, including all general, supplementary, and special conditions, drawings, specifications, addenda and forms …."

13.     Exhibit A to the Subcontract defines the scope of work to be performed by GLF CONSTRUCTION and also sets forth the scope of work to be performed by others, including work to be performed by FEDCON.

14.     GLF CONSTRUCTION'S scope of work generally consisted of

A. Unloading pipe pile and sheet pile materials provided by FEDCON, preparing pipe piling materials and transporting them to the location of installation on top of the existing earthen levy that had previously been degraded by FEDCON;

B. Utilizing cranes for driving the pipe piling and sheet piling materials after FEDCON had degraded the earthen levy;

C. Forming and pouring concrete t-walls around the pipe and sheet piling structural foundation materials

D. Forming and pouring concrete slope pavement and scour protection on the unprotected side of the degraded earthen levy

15.     Subsection III of Exhibit A to the Subcontract, provides, "The following items of work will be performed by others:" and specifically provides in sub-subsection C and E:

> C.   Construction and maintenance of a temporary access road approximately 12' wide and extending the length of the levee, located adjacent to the temporary work platform on the protected side of the levee.
>
> E.   Construction and maintenance of two (2) temporary work platforms on the protected side of the levee.  The temporary work platforms will be approximately 30' feet wide x 600' long, located 10' from the centerline of the steel sheet pile, and will be removed and extended in segments for the entire length of the levee as the Work progresses.

The design, construction and maintenance of the temporary access road and work platforms were the responsibility of FEDCON during the course of the project.

17.     The specifications incorporated into the Subcontract include EM385 which sets forth the design requirements for the temporary access road and work platforms from a safety standpoint.   FEDCON was required to comply with the technical specifications including EM385, as well as good engineering and construction practices, in the design and construction of the access road and work platforms.

18.     The Contract Documents incorporated into the Subcontract include a portion of the work to be performed adjacent to a petrochemical plant owned by Chevron, which work was generally referred to as "Work Front Two" work.  The Work Front Two work included work in an area where Chevron had constructed overhead pipe leading to a dock on the Mississippi River, thereby necessitating GLF CONSTRUCTION to use low-profile specialized equipment to drive the pipe piling and sheet piling materials in the location of the overhead pipe.

**Access Road and Work Platforms**

19.     The 12′ wide temporary access road to be designed, constructed and maintained by FEDCON in accordance with EM385 and good engineering and construction practices was to be used to transport the pipe piling materials, sheet piling materials, rebar materials, concrete materials and also provide access for GLF CONSTRUCTION'S manpower and equipment to the location of the work.

20.     The 30′ wide work platform to be designed, constructed and maintained by FEDCON in accordance with the Contract Specifications and good engineering and construction practices was to be used by GLF CONSTRUCTION for its cranes to lift materials into place and drive the pipe piling and sheet piling materials into the degraded earthen levy to form the structural foundation for the concrete t-walls to be formed and poured in place by GLF CONSTRUCTION.  Prior to any of GLF CONSTRUCTION'S work proceeding, FEDCON was also required to install temporary flood protection on the unprotected side of the degraded earthen levy.

21.     Based upon the construction sequence determined by FEDCON as set forth in the Subcontract and as alleged above, GLF CONSTRUCTION'S work was dependent upon the timely degrading of the existing earthen levy; and it was dependent upon the timely and efficient delivery of pipe piling materials, sheet piling materials, rebar materials, and concrete materials to the location of the work utilizing the 12′ access road designed, constructed and maintained by FEDCON.  The access road also provided the means by which GLF CONSTRUCTION'S

manpower and miscellaneous and supporting construction equipment would access the work location.

22.     Additionally, based upon the construction sequence determined by FEDCON as set forth in the Subcontract and as alleged above, GLF CONSTRUCTION'S work was dependent upon the work platform being properly engineered and constructed by FEDCON so that it would structurally support the cranes GLF CONSTRUCTION was required to use to drive the pipe piling and sheet piling materials into the earthen levy, and also provide the working space required to form and pour the concrete t-walls.

23.     Based upon the construction sequence determined by FEDCON as set forth in the Subcontract and as alleged in paragraphs 19, 20, 21 and 22 above, GLF CONSTRUCTION'S ability to timely and efficiently perform its Subcontract work was completely dependent upon FEDCON'S proper engineering, design and construction of the temporary access road, and upon FEDCON'S proper engineering, design and construction of the work platform, and upon the timely and proper construction of the temporary flood protection, all of which had to be timely and property performed by FEDCON as predecessor activities to GLF CONSTRUCTION'S performance of its Subcontract work.

24.     During the course of construction, FEDCON failed to timely and properly design, engineer, construct and maintain the temporary access road and work platforms in conformance with the requirements of the Subcontract and incorporated Prime Contract requirements and it failed to construct temporary flood protection in a manner that would allow the work to proceed as permitted by the USACE as owner of the Project.

**FEDCON's Decision to Change Piling Materials**

25.     The Prime Contract Specifications require the use of PZ-22 sheet piling materials to be driven by GLF CONSTRUCTION into the degraded earthen levy.   Prior to GLF CONSTRUCTION driving any of the PZ-22 sheet piling materials FEDCON notified GLF CONSTRUCTION of FEDCON'S unilateral decision to change the sheet piling material from PZ-22 materials to AZ 13-770 sheet piling materials.  The AZ 13-770 sheet piling materials are thinner and lighter (and less expensive) than the specified PZ-22 sheet piling materials.

26.     Pursuant to its unilateral change, FEDCON proceeded to purchase and deliver to the Project site AZ 13-770 sheet piling materials and directed GLF CONSTRUCTION to transport the AZ 13-770 materials to the levy location and drive same in lieu of the PZ-22 sheet piling materials.

27.     In accordance with FEDCON'S direction GLF CONSTRUCTION made several attempts to drive the AZ 13-770 sheet piling materials which attempts failed due to the lighter and thinner sheet piling materials not being compatible with the soils conditions in the earthen levy.  After several failed attempts, including attempts witnessed by consultants hired by both FEDCON and GLF CONSTRUCTION, FEDCON reversed its earlier unilateral decision to change the sheet piling material and directed GLF CONSTRUCTION to use the specified PZ-22 sheet piling materials.  FEDCON directed GLF CONSTRUCTION to extract all of the AZ 13-770 sheet piling material, load same and transport them to a location designated by FEDCON and further directed GLF CONSTRUCTION to maintain a record of its costs incurred in relation to the attempts to drive the AZ 13-770 sheet piling materials and for the removal and transport of same and to submit the costs for reimbursement by FEDCON.

28.    GLF CONSTRUCTION maintained records of all costs incurred in relation to the failed unilateral change in sheet piling material by FEDCON and submitted the costs in the form of a Request for Equitable Adjustment on November 25, 2014.  To date FEDCON has failed to reimburse GLF CONSTRUCTION for the costs associated with FEDCON'S failed unilateral decision to switch to the lighter, thinner and less expensive AZ 13-770 sheet piling materials.

29.    As a result of the efforts by GLF CONSTRUCTION to drive the AZ 13-770 substituted sheet piling material pursuant to the direction of FEDCON, the soils in the location of where the AZ 13-770 sheet piling materials were driven became consolidated thereby making it far more difficult for GLF CONSTRUCTION to drive the specified PZ-22 sheet piling materials in those areas, which resulted in GLF CONSTRUCTION incurring significant additional cost to drive the PZ-22 sheet piling materials than it otherwise would.

**FEDCON's Improper Termination of GLF CONSTRUCTION**

30.    The Work Front Two work alluded to in paragraph 18 above is at the southern end of the Project and includes work in a transition section from Monolith 072 to 075 and the remainder of the work from Monolith 076 to Monolith 118.  (Each typical Monolith is a sixty foot (60') section of concrete t-wall.)   The construction of Monolith 072 to 075 leaves approximately twelve feet (12') of space between the end of the concrete t-wall and the edge of the work platform and access road, which space is not large enough to allow GLF CONSTRUCTION to remove its crane(s) should same become necessary during the course of construction. As a result, GLF CONSTRUCTION notified FEDCON that the section of wall from Monolith 072 to 075 would have to be constructed last so that GLF CONSTRUCTION'S very expensive crane equipment would not become trapped on the project.

9

31.     The work from Monolith 076 south to the end of the Project requires the construction of the 12′ access road and 30′ work platform by FEDCON pursuant to the provisions of Exhibit A, Section III (C) and (E).  The work in these locations has been on hold since July 2015 while GLF CONSTRUCTION awaited a plan from FEDCON as to how the access road and work platform were going to be engineered, designed and constructed by FEDCON as FEDCON contended that this area was the subject of a changed site condition due to space limitations.

32.     On or about May 23, 2016 FEDCON issued a notice of default to GLF CONSTRUCTION and directed that GLF CONSTRUCTION submit a plan setting forth how it intended to proceed with the work from Monolith 076 south to the end of the project.  As of May 23, 2016 FEDCON had not yet prepared the plan it was responsible for preparing in regard to the engineering, design and construction of the access road and work platform required for work on Monoliths 076 to 118 to be performed.

33.     On or about May 25, 2016 FEDCON issued a follow up notice to GLF CONSTRUCTION addressing Monoliths 076 south and in addition FEDCON referenced the work from Monolith 072 to 075.  GLF CONSTRUCTION responded that it was FEDCON'S responsibility to prepare the plan for the work and that pursuant to FEDCON'S request GLF CONSTRUCTION affirmed that it was ready, willing and able to undertake the work at the earliest reasonable time.  GLF CONSTRUCTION also notified FEDCON again that the work from Monolith 072 to 075 would need to be the last work performed as a result of the impact on GLF CONSTRUCTION'S ability to remove and maintain its crane equipment if those Monoliths were constructed.

34.     Notwithstanding GLF CONSTRUCTION'S May 24th and May 26th responses to FEDCON'S notices of default, which responses contained the exact information FEDCON requested insofar as GLF CONSTRUCTION'S reaffirmation of its preparedness to recommence construction at the earliest reasonable time, on May 27, 2016 FEDCON issued notice to GLF CONSTRUCTION of the termination of the Subcontract.

35.     As of the May 27, 2016 date of termination of the Subcontract by FEDCON, FEDCON had not prepared the required engineered plan for providing access and a work platform for the work it was requiring GLF CONSTRUCTION to perform, nor had FEDCON actually constructed either the access road or the work platform, which access and work platform are the predecessor work activities to GLF CONSTRUCTION'S Subcontract work.  As a result, GLF CONSTRUCTION could not perform the work that FEDCON was directing it to perform at the time of the termination of the Subcontract thereby making the termination improper.

36.     Prior to the date of termination of the Subcontract, GLF CONSTRUCTION submitted Requests for Equitable Adjustment for each of the claims for additional costs incurred by GLF CONSTRUCTION resulting from FEDCON'S failures to comply with the requirements of the of the Subcontract.  As of the date of termination of the Subcontract by FEDCON, FEDCON had not responded to any of GLF CONSTRUCTION'S claims for additional compensation.

## COUNT I – MILLER ACT PAYMENT BOND CLAIM
### (FEDCON, DAVID BOLAND, JT ENTERPRISES, and SURETY)

GLF CONSTRUCTION re-alleges and reincorporates the allegations contained in paragraphs 1 through 36 above, as if fully set forth herein, and further states:

37.     This is an action for damages pursuant to 40 U.S.C. §3133(b)(3) against the Federal Miller Act Bond issued by FEDCON, DAVID BOLAND, INC., JT ENTERPRISES CONSTRUCTION, INC. as principals, and WESTERN SURETY, as surety, for damages resulting from FEDCON'S various breaches of the Subcontract as set forth above.

38.     As a direct and proximate result of FEDCON'S failure to timely and properly engineer, design, and construct the access road and work platforms, there were multiple days during the course of the project that GLF CONSTRUCTION was unable to work in perfect weather conditions due to the access roads being impassable or non-useable and/or closed for use by FEDCON.

39.     As a direction and proximate result of FEDCON'S failure to timely and properly engineer, design and construct the work platforms, GLF CONSTRUCTION was required to employ the use of crane mats and other extraordinary measures to allow the cranes to be used to perform the work.

40.     As a direct and proximate result of FEDCON'S failure to provide two work fronts simultaneously as required by the Subcontract, GLF CONSTRUCTION was precluded from working in multiple areas thereby resulting in men and equipment dedicated to the project by GLF CONSTRUCTION not being used efficiently or effectively thereby resulting in increased labor and equipment costs.

41.     As a direct and proximate result of FEDCON's failure to timely and properly plan and prepare for the performance of the low-profile special work at Work Front Two, GLF CONSTRUCTION was required to incur additional costs for the extended rental of the specialized low-profile equipment needed to perform such work.

42.     As a direct and proximate result of FEDCON's failure to provide a properly designed, engineered, constructed and maintained temporary access road in the Work Front Two location of the work, GLF CONSTRUCTION was required to utilize the work platform for access thereby causing GLF CONSTRUCTION to double and triple handle materials thereby incurring additional costs to perform the work due to reduced efficiency.

43.     As a direct and proximate result of FEDCON'S unilateral decision to change the sheet piling materials from the specified PZ-22 materials to the AZ 13-770 materials GLF CONSTRUCTION incurred additional costs in the performance of the work.

44.     As a direct and proximate result of FEDCON'S improper termination of the Subcontract GLF CONSTRUCTION has incurred damages in the form of unpaid amounts due for work performed under the Subcontract.

45.     The breaches of the Subcontract by FEDCON as set forth herein are also breaches of the Miller Act Bond issued by Defendants, and all of the costs incurred by GLF CONSTRUCTION due to the breaches of the Subcontract are damages recoverable against the Miller Act Bond.

46.     FEDCON and WESTERN SURETY are obligated, pursuant to the Miller Act Bond, to compensate GLF CONSTRUCTION for the labor, materials, and services it furnished on the Project pursuant to the Subcontract for which FEDCON has failed to make payment in an amount in excess of $5,000,000.00.

47.     GLF CONSTRUCTION has been required to retain the undersigned counsel in order to maintain this action and is obligated to pay reasonable attorney's fees therefore, and

pursuant to its claim against the Miller Act payment bond, is entitled to recovery of its reasonable attorney's fees.

Wherefore, use Plaintiff, GLF CONSTRUCTION CORPORATION, demands judgment against Defendants, FEDCON JOINT VENTURE, DAVID BOLAND, INC., as a joint venturer thereof, JT CONSTRUCTION ENTERPRISES, as a joint venturer thereof, and WESTERN SURETY COMPANY for all compensatory and consequential damages resulting from FEDCON's failure to properly make payment to GLF CONSTRUCTION, plus all interest, costs, and attorney's fees, and such other relief that the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT
### (FEDCON, DAVID BOLAND, & JT CONSTRUCTION)

GLF CONSTRUCTION re-alleges and reincorporates the allegations contained in paragraphs 1 through 44 above, as if fully set forth herein, and further states:

48. The Subcontract is a valid and enforceable agreement between FEDCON and GLF CONSTRUCTION.

49. FEDCON materially breached the Subcontract by failing to compensate GLF CONSTRUCTION for the additional costs incurred due to FEDCON'S failures to comply with the requirements of the Subcontract resulting in additional costs incurred by GLF CONSTRUCTION.

50. FEDCON further materially breached the Subcontract by impacting GLF CONSTRUCTION'S ability to timely perform the work through its active interference with GLF CONSTRUCTION'S performance thereby causing GLF CONSTRUCTION to incur additional costs in the performance of the Subcontract work.

51.     FEDCON further materially breached the Subcontract by improperly default terminating the Subcontract due to its failure to perform the contractually required predecessor work thereby making GLF CONSTRUCTION'S Subcontract work unavailable.

52     As a direct and proximate result of FEDCON's material breaches of the Subcontract, and the delays resulting therefrom, GLF has suffered damages in the form of non-payment in an amount in excess of $5,000,000.00.

53.     GLF CONSTRUCTION has been required to retain the undersigned counsel in order to maintain this action and is obligated to pay reasonable attorney's fees therefore. Pursuant to the Subcontract, the prevailing party in this dispute is entitled to recovery of its reasonable attorney's fees.

Wherefore, use Plaintiff, GLF CONSTRUCTION CORPORATION, demands judgment against Defendants, FEDCON JOINT VENTURE, DAVID BOLAND, INC., as a joint venturer thereof, and JT CONSTRUCTION ENTERPRISES, as a joint venturer thereof, for all compensatory and consequential damages, including delay damages, resulting from its breaches of contract, plus all interest, costs, and attorney's fees, and such other relief that the Court deems just and proper.

## COUNT III – UNJUST ENRICHMENT
### (FEDCON, DAVID BOLAND, and JT ENTERPRISES)

GLF CONSTRUCTION re-alleges and reincorporates the allegations contained in paragraphs 1 through 53 above, as if fully set forth herein, and further states:

54.     Count III of the Complaint is a claim for equitable relief, pled in the alternative.

55.     GLF CONSTRUCTION provided labor, materials, and equipment on the Project necessary for FEDCON to complete its obligations thereon pursuant to its agreement with USACE.

56.     FEDCON was unjustly enriched by GLF CONSTRUCTION's provision of said labor, materials, and equipment on the Project.

57.     GLF CONSTRUCTION incurred significant costs by providing labor, materials, and equipment to the Project.

58.     There is no justification or cause for FEDCON's enrichment or GLF CONSTRUCTION's impoverishment resulting therefrom.

59.     There are no adequate remedies at law for GLF CONSTRUCTION to seek compensation for the benefit conferred on FEDCON.

WHEREFORE, use Plaintiff, GLF CONSTRUCTION CORPORATION, demands judgment against Defendants, FEDCON JOINT VENTURE, DAVID BOLAND, INC., as a joint venturer thereof, and JT CONSTRUCTION ENTERPRISES, as a joint venturer thereof for all compensatory and consequential damages, including delay damages, resulting from FEDCON's failure to properly make payment to GLF, plus all interest and costs and such other relief that the Court deems just and proper.

**Respectfully Submitted, July 20, 2016:**

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

By*: /s/   Mark W. Frilot*
Mark W. Frilot, T.A. (#27470)
Matthew J. Guy (#33166)
3 Sanctuary Boulevard, Suite 201
Mandeville, Louisiana  70471
Telephone:  (985) 819-8400
Facsimile:   (985) 819-8484
E-mail:  mfrilot@bakerdonelson.com
E-mail:  mguy@bakerdonelson.com


        *-and-*


To Be Admitted *Pro Hac Vice:*

**FERENCIK LIBANOFF BRANDT BUSTAMANTE & GOLDSTEIN, P.A.**
Ira Libanoff
Florida Bar No.:  378429
Jordan Nadel
Florida Bar No.: 99582
150 South Pine Island Road, Suite 400
Fort Lauderdale, Florida 33324
Telephone:  (954) 474-8080
Facsimile:  (954) 474-7343
Dade:  (305) 949-8003
ilibanoff@flblawyers.com
jnadel@flblawyers.com
noutar@flblawyers.com

*Attorneys for Plaintiff*