UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of GLF CONSTRUCTION CORPORATION | CIVIL ACTION |
| VERSUS | NO. 16-13022 |
| FEDCON JOINT VENTURE, ET AL. | SECTION "R" (4) |

# **ORDER AND REASONS**

GLF Construction Corporation moves the Court to reconsider its order[1] staying this case pending the completion of contractual dispute resolution procedures.[2] For the following reasons, GLF Construction's motion is denied.

## **I. BACKGROUND**

This dispute arises out of a construction contract between the United States, by and through the US Army Corps of Engineers (USACE), and defendant FEDCON, a joint venture consisting of David Boland, Inc. and JT Construction.[3] On or about October 18, 2013, FEDCON was awarded a

---

[1] R. Doc. 25.
[2] R. Doc. 26.
[3] R. Doc. 1 at 1-3 ¶¶ 2, 9.

contract (the Prime Contract) to perform all work on the "Resilient Features" project.[4] The contract called for repair and raising of substandard levees along a section of the Mississippi River in Plaquemines Parish, Louisiana.[5] As required by the Prime Contract, FEDCON executed and delivered to USACE a Miller Act payment bond, under which FEDCON and Western Surety bound themselves to pay the sum under the bond.[6]

On or about January 22, 2014, FEDCON entered into a subcontract with GLF Construction to furnish labor, materials, and services on the project and complete a portion of FEDCON's scope of work under the Prime Contract for the agreed price of $10,517,859.50.[7] In May of 2016, FEDCON terminated the subcontract with GLF Construction.[8]

On July 20, 2016, GLF Construction filed this Miller Act lawsuit alleging that FEDCON breached its subcontract with GLF Construction.[9] GLF Construction sought payment under the Miller Act Bond, and also brought claims for breach of contract and unjust enrichment.[10] On October 19, 2016, the defendants filed a motion to stay, arguing that GLF

---

[4] *Id.*
[5] *Id.*
[6] *Id.* ¶ 10; R. Doc. 1-1 at 1 (Miller Act Payment Bond).
[7] R. Doc. 1 at 3-4 ¶ 11.
[8] *Id.* at 11 ¶ 35.
[9] *Id.* at 12 ¶ 37.
[10] *Id.* at 12-16.

Construction is bound by the terms of the subcontract with FEDCON to stay any litigation until the completion of the dispute resolution procedures contained in the subcontract.[11]

On March 7, 2017, the Court stayed the case, finding that the subcontract between the parties contractually bound GLF Construction to stay the litigation pending the completion of the applicable dispute resolution procedures.[12] The Court's order administratively closed the case pending the stay.[13] GLF Construction now moves the Court to reconsider its order under Federal Rule of Civil Procedure 59(e), arguing both that the Court committed manifest error and that failure to lift the stay will result in manifest injustice.[14] FEDCON filed a response in opposition,[15] and GLF Construction replied.[16]

## II. LEGAL STANDARD

A district court has considerable discretion to grant or deny a motion under Rule 59(e). *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355

---

[11] R. Doc. 8-1 at 1-2.
[12] R. Doc. 25 at 6-7.
[13] *Id.* at 10.
[14] R. Doc. 26 at 2-4.
[15] R. Doc. 29.
[16] R. Doc. 32.

(5th Cir. 1993). Reconsideration of an earlier order is an extraordinary remedy, which should be granted sparingly. *See Fields v. Pool Offshore, Inc.*, 1998 WL 43217, *2 (E.D. La. Mar. 19, 1998); *Bardwell v. George G. Sharp, Inc.*, 1995 WL 517120, *1 (E.D. La. Aug. 30, 1995). The Court must "strike the proper balance between the need for finality and the need to render a just decision on the basis of all the facts." *Edward H. Bohlin Co.*, 6 F.3d at 355. A moving party must satisfy at least one of the following criteria to prevail on a Rule 59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law. *See Fidelity & Deposit Co. of Md. v. Omni Bank*, 1999 WL 970526, *3 (E.D. La. Oct. 21, 1999); *Fields*, 1998 WL 43217 at *2; *see also Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995) ("Rule 59 and Rule 60(b)(2) share the same standard for granting relief on the basis of newly discovered evidence.").

### III. DISCUSSION

GLF Construction does not base this motion on newly discovered or previously unavailable evidence, nor does it argue that reconsideration is

justified by an intervening change in the controlling law. Instead, it argues that the Court committed manifest error because its order staying the entire litigation, instead of only specific claims, was based on an erroneous interpretation of the subcontract between FEDCON and GLF Construction.[17] Additionally, GLF Construction argues that failure to lift the stay will subject GLF Construction to manifest injustice.[18] The Court addresses each argument in turn.

### A. The Stay of the Entire Litigation Was Not Manifest Error

GLF Construction argues that the Court manifestly erred by interpreting paragraphs 13 and 23 of the subcontract between itself and FEDCON to require a stay of the entire litigation instead of only certain claims. GLF Construction's argument is unavailing. As explained in the Court's previous order, paragraph 23 of the subcontract states:

> If the Prime Contract incorporated herein is one for which the Contractor has provided any bond(s) pursuant to 40 U.S.C. § 270a, the "Miller Act," . . . then the Subcontractor expressly agrees to stay any action or claim under this Subcontract Agreement against the Contractor and against the Contractor's surety and its Payment Bond and Performance Bond pending the complete and final resolution of the Prime Contractor's contractual remedial procedure or the Subcontract Agreement's mediation procedure, as required by Paragraph 13, above.[19]

---

[17] R. Doc. 26-3 at 3-7.
[18] *Id.* at 7-9.
[19] R. Doc. 1-2 at 10 ¶ 23.

Paragraph 13A, in turn, reads:

> The contractual remedial procedure . . . relating to claims for which [USACE] may be responsible is specifically incorporated herein by reference and made a part of this Subcontract Agreement. The term "claim" as utilized in this paragraph shall include any request for monetary or other relief, claim, appeal, or action arising from the subcontractor for which [USACE] has, or may have, responsibility. The Subcontractor shall first pursue and fully exhaust said procedure before commencing any other action against the Contractor or its surety for any claims it may have arising out of its performance of the Work herein. Upon the Subcontractor's written request, the Contractor agrees to prosecute all claims submitted by the Subcontractor under the contractual remedial procedure of the Prime Contract on behalf of, and to the extent required by, the Subcontractor. . . . Final determination of the Subcontractor's claim(s) by the appropriate board or court shall be final and binding on the Subcontractor and the Contractor shall have no further liability, responsibility, or obligation to the Subcontractor except as may be otherwise provided in this Subcontract Agreement.[20]

GLF Construction makes the same argument it made in opposition to the stay: that GLF Construction's breach of contract claim is not covered by the provision and therefore should not be stayed. This argument fails for the same reasons the Court rejected it previously. A plain reading of the text of the applicable provisions indicates that they apply to all of GLF Construction's claims. "Responsibility" is not qualified in the contract and

---

[20] *Id.* at 7 ¶ 13.

there is no threshold; if USACE is even 1 percent responsible for the claim, then the provision applies.

As explained in its previous order, GLF Construction's breach of contract claim against FEDCON arises in part out of FEDCON's alleged failure to construct a temporary access road and two temporary work platforms.[21] But defendants have submitted an April 7, 2016 letter from USACE to FEDCON in which USACE acknowledges its responsibility for at least some of the conditions that led to FEDCON's alleged breach of contract.[22] Therefore, given the "intertwined" relationship between USACE's conduct and the breach of contract claim between GLF Construction and FEDCON, GLF Construction's breach of contract claim is a claim that USACE may have responsibility for, and GLF Construction's lawsuit bringing the breach of contract claim is an action that USACE may have responsibility for.[23] *See United States v. Bhate Envtl. Assocs., Inc.*, No. 15-146, 2016 WL 544406, at *3 (D. Alaska Feb. 9, 2016) ("Suffice to say that there is an intertwined relationship between the Owner-related claims and those that

---

[21]  R. Doc. 1 at 6-7 ¶¶ 19-24.
[22]  R. Doc. 19-1 at 32.
[23]  The same is true for any breach of contract claim based on FEDCON's termination of the subcontract.

rest solely between the parties."). Accordingly, the language of the subcontract agreement requires the stay.

Further, regardless of whether the term "claim" in paragraph 13 covers all of GLF Construction's claims against FEDCON, GLF Construction's argument ignores the text of paragraph 23. Unlike paragraph 13, paragraph 23 not only refers to "claims" but also states "the Subcontractor expressly agrees to stay *any action* or claim . . . ."[24] If GLF Construction's interpretation was correct, then the contract's inclusion of the words "any action" would be superfluous.

Additionally, even if the Court incorrectly interpreted the contract and should have not have found the agreement to require staying the entire litigation—a proposition for which GLF Construction offers no support other than its own self-serving interpretation—the Court would still be well within its discretion to stay the entire litigation. The Court has "broad discretion to stay proceedings as an incident to its power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), and the Court should consider judicial economy in deciding whether to stay a case, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). As mentioned in its previous order, the contract dispute resolution procedure may resolve all or part of this dispute, making

---

[24] R. Doc. 1-2 at 10 ¶ 23 (emphasis added).

further proceedings limited or unnecessary. Therefore, judicial economy supports staying the entire litigation. *See Bhate*, 2016 WL 544406, at *4 (finding that allowing some claims to proceed while others are stayed would create parallel proceedings, which would not only be inefficient but also contrary to judicial economy).

Finally, GLF Construction takes issue with the cases cited by the Court in its previous order, noting that these cases either had slightly different facts or different contractual language, and that they are "not controlling."[25] Of course, GLF Construction is aware that courts often rely on non-precedential cases to support their findings, and that cases (and their facts) need not be identical to be helpful. Further, the Court did not state that it was bound by any of these cases, or that the cases were identical to the dispute at hand. Instead, the Court merely did what the federal judiciary does on a daily basis, it used well-reasoned cases that dealt with similar situations as a guide. GLF Construction has pointed to nothing indicating that the Court's citation of these cases was erroneous, much less manifestly so. *See Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (defining "manifest error" as one that "is plain and indisputable, and that amounts to a complete disregard of controlling law") (internal quotation and citation omitted).

---

[25] R. Doc. 26-3 at 5-7.

## B. The Court's Previous Order Will Not Result in Manifest Injustice

Initially, GLF Construction argued that failure to lift the stay will result in manifest injustice.[26] At the time GLF Construction filed this motion, FEDCON had recently asked a Florida state court to reconsider its previous order dismissing FEDCON's claims against GLF Construction on *forum non conveniens* grounds.[27] According to GLF Construction, if FEDCON could pursue claims against GLF Construction in another proceeding without GLF Construction asserting counterclaims because of the stay, manifest injustice would occur.

On April 4, 2017, the Circuit Court for the Ninth Judicial District in Orange County, Florida declined to reconsider its previous order and finalized the dismissal of FEDCON's suit.[28] Further, FEDCON indicates to the Court that it intends to abide by the outcome of the dispute resolution procedures before filing any counterclaims against GLF Construction.[29] Therefore, the Court need not address GLF Construction's manifest injustice argument because it is now moot.[30] As such, GLF Construction has suffered

---

[26] *Id.* at 8.
[27] R. Doc. 26-2 at 1.
[28] R. Doc. 29-1 at 1.
[29] R. Doc. 29 at 4.
[30] In GLF Construction's reply, it acknowledges these recent events and states that it "concedes its Motion." R. Doc. 32 at 2. But GLF

no injustice, and any potential future injustice is hypothetical, and certainly does not rise to the level necessary for the Court to reconsider its order.

Because GLF Construction fails to show that the Court's previous order staying this case was manifestly erroneous or that GLF Construction will suffer manifest injustice, its motion to reconsider must be denied.

IV. **CONCLUSION**

For the foregoing reasons, GLF Construction's motion to reconsider is DENIED.

New Orleans, Louisiana, this __20th__ day of June, 2017.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

Construction's motion not only argued that it faced manifest injustice, but also that the Court manifestly erred. *See* R. Doc. 26-3 at 3-7. GLF Construction's reply does not address its manifest error argument, and therefore the Court will not treat GLF Construction's "concession" as a barrier to resolving this motion in its entirety.